WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Benjamin Larin,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>    Respondents. | No. CV-19-00545-TUC-JCH (MSA)<br><br>**REPORT AND RECOMMENDATION** |

George Benjamin Larin, an Arizona state prisoner, seeks habeas relief under 28 U.S.C. § 2254. For the following reasons, the Court will recommend that his request for relief be denied.

**Background**

In 2012, a jury found Larin guilty of first-degree burglary, armed robbery, aggravated robbery, and kidnapping. *State v. Larin* (*Larin I*), 310 P.3d 990, 993 (Ariz. Ct. App. 2013). The Arizona Court of Appeals recited the details of his crimes as follows:

> On June 2, 2011, around 5:30 p.m., A.A. was at his home in Tucson working on a vehicle in his garage when he saw three masked men in a white car drive by in the alley. A.A. closed his garage door and called his neighbor to notify him of what he had seen. The neighbor's wife eventually called the police.
> 
> Meanwhile, a few houses away, J.W. was leaving his friend A.V.'s house where he had purchased heroin. J.W. left through the back door, and, as soon as he got into his vehicle, a masked man later identified as Alonzo Rada, who had been hiding in the back seat, pointed a gun at him. J.W. and Rada soon were joined by two other men, both of whom were wearing masks and holding handguns. The two men later were identified as Anthony Torre

>  and Larin.
>     The three men walked J.W. at gunpoint to the rear of A.V.'s house and directed him to knock on the back door. When A.V. opened the door, Larin and the others forced their way in at gunpoint. A.V.'s wife, S.B., and the children were led into one of the bedrooms where they remained for the duration of the incident. A.V. and J.W. were told to "go into the living room and sit on the couch [with their] hands on [their] heads." A.V., who understood that he "was being robbed," told the men where the heroin was located. While Larin and Rada searched for the heroin, Torre held A.V. and J.W. at gunpoint. After finding the heroin, Larin and Rada began collecting other items, including cash, a gun, televisions, and game consoles. The three men then decided to leave. Torre left through the back door but returned immediately after he saw police officers outside. After telling Larin and Rada about the officers, Torre left through the front door and officers immediately apprehended him. Larin and Rada then got rid of their guns, took off their masks, and, as they attempted to leave through the back door, were arrested.

*Id.* at 993–94 (alterations in original). Following a partially successful direct appeal, Larin was resentenced to concurrent prison terms totaling 18 years. *State v. Larin* (*Larin II*), No. 2 CA–CR 2017–0330–PR, 2018 WL 2383684, at \*1 (Ariz. Ct. App. May 25, 2018).

Larin then retained a new attorney and sought postconviction relief, raising the issue of ineffective assistance of counsel. (Doc. 11-1 at 124–28.) In the petition for relief, he argued that his trial counsel was ineffective for failing to file a motion to suppress an in-court identification, failing to file other pretrial motions, failing to request that the jury be instructed on false imprisonment, failing to move for a judgment of acquittal, failing to object to improper questioning and statements, and failing to interview Rachel Larin (Larin's wife) and Amanda Larin-Rada (Larin's sister) before trial. (*Id.* at 131–55.) In support of the last claim, Rachel, Amanda, and Alonzo Rada (codefendant to Larin and husband to Amanda) submitted affidavits, asserting that Larin was merely visiting the victims and played no part in the home invasion. (*Id.* at 163–64, 166–67, 169–71.) The trial court rejected Larin's claims as without merit. (*Id.* at 207–16.) In doing so, the court relied in part on the affidavit of Larin's trial counsel, who opined that Larin and his family fabricated a story to absolve Larin of criminal responsibility. (*Id.* at 194–95.)

Larin then filed a motion for reconsideration, asserting that his trial counsel had

made numerous incorrect statements in the affidavit, and that an evidentiary hearing was warranted on that issue. (*Id.* at 218–21.) The trial court agreed. (Doc. 11-2 at 21–22.) The testimony of trial counsel, as well as numerous exhibits submitted thereafter, confirmed that counsel's affidavit contained multiple inaccuracies. (*See id.* at 118–20.)

In an amended decision, the trial court nevertheless rejected Larin's claims. (*Id.* at 117–25.) The court explained that it had considered trial counsel's affidavit only as to one claim (that counsel was ineffective for failing to interview Rachel and Amanda) and thus adopted its previous ruling as to Larin's other claims. (*Id.* at 118.) As to the claim concerning Rachel and Amanda, the court assumed (but did not conclude) that Larin's counsel performed deficiently by not conducting interviews. (*Id.* at 123.) However, considering the strength of the prosecution's case, the court found that Larin was not prejudiced. (*Id.* at 124–25.)

Larin filed a petition for review in the Arizona Court of Appeals. (*Id.* at 130–49.) Asserting that trial counsel's affidavit was the "principal issue" in the case, Larin argued that counsel's false statements negated the presumption of reasonable performance. (*Id.* at 137, 143.) He also argued that his counsel performed deficiently by not interviewing Rachel and Amanda before trial. (*Id.* at 146–48.) The Arizona Court of Appeals held that even if Larin were correct that his counsel performed deficiently, his claims nevertheless failed because he "ignore[d] the trial court's conclusion" that there was no prejudice. *Larin II*, 2018 WL 2383684, at *2. In addition, the court observed that Larin did not specifically appeal the denial of his other claims. *Id.*

Larin's petition for review to the Arizona Supreme Court was denied. (Doc. 11-2 at 187.) This timely proceeding followed.

## Legal Standard

This habeas action was filed after April 24, 1996, and is therefore governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Ochoa v. Davis*, 16 F.4th 1314, 1325 (9th Cir. 2021). Under AEDPA, state prisoners normally must exhaust their claims in state court before seeking federal habeas relief. *Bynoe v. Baca*, 966 F.3d

972, 978 (9th Cir. 2020). "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc). Federal review of procedurally defaulted claims "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In addition, AEDPA limits the authority of federal courts to grant habeas relief on claims that were "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). A federal court must defer to the state court's decision on such a claim unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "This is a 'highly deferential standard for evaluating state-court rulings.'" *Demetrulias v. Davis*, 14 F.4th 898, 905 (9th Cir. 2021) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

**Discussion**

In his federal petition, Larin incorporates the claims he raised in his petition for postconviction relief and petition for review. He alleges that his trial counsel was ineffective for failing to (a) interview Rachel and Amanda, (b) file a motion to suppress an in-court identification, (c) file other pretrial motions, (d) request a false imprisonment instruction, (e) move for a judgment of acquittal, and (f) object to improper questioning and statements. He also alleges that the state trial court erred when it did not grant his petition for postconviction relief based solely on his trial counsel's erroneous affidavit. This final claim is not cognizable on federal habeas review because (as far as the Court can tell) it does not involve a question of federal law. 28 U.S.C. § 2254(a) (authorizing habeas relief for state prisoners who are in custody in violation of *federal* law). The Court will recommend that it be denied on that basis.

**I.     Claims (b), (c), (d), (e), and (f) are procedurally defaulted without excuse.**

To exhaust his claims, Larin was required to "fairly present" them to the trial court and to the Arizona Court of Appeals. *Kyzar v. Ryan*, 780 F.3d 940, 946–47 (9th Cir. 2015) (quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999) (per curiam)). To "fairly present" his claims, he was required to "describe in the state proceedings both the operative facts and the federal legal theory on which [each] claim [was] based so that the state courts ha[d] a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim[s]." *Walden v. Shinn*, 990 F.3d 1183, 1196 (9th Cir. 2021) (quoting *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008)).

Here, Larin fairly presented all six ineffective-assistance claims to the trial court. In his petition for postconviction relief, he cited the Sixth Amendment and described the specific facts underlying each of his claims (e.g., his counsel failed to request a false imprisonment instruction). (Doc. 11-1 at 144–55.) However, Larin did not do the same in his petition for review to the Arizona Court of Appeals. That petition includes reference to the Sixth Amendment, but it does not contain a description of "the operative facts" underlying five of Larin's claims. The only mention of claims (b), (c), (d), (e), and (f) is a vague statement by Larin that he presented the trial court with "seven issues alleged to have constituted ineffective assistance of counsel."[1] (Doc. 11-2 at 135.) This was not sufficiently specific to alert the Arizona Court of Appeals to the factual bases for his claims. Consequently, the claims are unexhausted. *See Wood v. Ryan*, 693 F.3d 1104, 1117 (9th Cir. 2012) (holding that the petitioner's claims were unexhausted because his state-court briefing described the law but not the facts).

As previously explained, "[a]n unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens*, 740 F.3d at 1317. There are at least two state procedural rules barring Larin from returning to state court. Claims like Larin's must be filed "within 30 days after the issuance of the mandate in the direct appeal." Ariz. R. Crim. P. 32.1(a), 32.4(b)(3)(A). The mandate

---

[1]     As the Court reads it, the petition for postconviction relief includes only six claims.

in Larin's direct appeal issued in late 2018, so any notice requesting postconviction relief would be far outside the filing period. (Doc. 11-2 at 187.) In addition, defendants are precluded from raising claims in postconviction proceedings that were "waived . . . in any previous post-conviction proceeding." Ariz. R. Crim. P. 32.2(a)(3). Larin waived his claims during his postconviction proceeding by not appealing them to the Arizona Court of Appeals. *Larin II*, 2018 WL 2383684, at *2; *see State v. Bolton*, 896 P.2d 830, 838 (Ariz. 1995) (stating that "[f]ailure to argue a claim on appeal constitutes waiver of that claim" (citing *State v. Carver*, 771 P.2d 1382, 1390 (Ariz. 1989))). Because a return to state court would be futile, Larin's claims are procedurally defaulted.

Federal courts may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Larin makes no attempt to argue that he can show cause and prejudice.[2] Larin also does not argue that he can satisfy the fundamental-miscarriage-of-justice exception, which requires him to prove that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). To the extent that Larin's mere-presence defense is bolstered by Rachel's and Amanda's testimony, Larin still fails to meet this exception; he concedes that, notwithstanding their testimony, at least *some* reasonable jurors would still vote to convict him. (Doc. 21 at 6.)

Claims (b), (c), (d), (e), and (f) are procedurally defaulted without excuse. The Court will recommend that they be denied.

. . . .

. . . .

---

[2] Larin potentially has grounds for arguing cause and prejudice based on his postconviction counsel's failure to properly present his claims to the Arizona Court of Appeals. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.") This issue need not be addressed because, as discussed in a subsequent section, Larin's claims fail under de novo review.

- 6 -

**II.     Claim (a) does not overcome AEDPA deference.**

Larin contends that his trial counsel was ineffective for failing to interview Rachel and Amanda before trial, because they had information that was favorable to his mere-presence defense. The Arizona Court of Appeals rejected this claim based on the trial court's finding that there was no prejudice, which Larin failed to challenge on appeal. *Larin II*, 2018 WL 2383684, at *2. This decision was not objectively unreasonable. 28 U.S.C. § 2254(d).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, the evidence convincingly showed that Larin was guilty. The victims' neighbor testified that he saw a white car carrying three masked passengers just before the crime occurred; the car belonged to Larin's sister; and Larin's cellphone was found in the center console of the car. *Larin I*, 310 P.3d at 993, 998; (Doc. 11-1 at 132, 136–37; Doc. 11-2 at 124). Two victims, who were present in the house, testified that three masked men committed the home invasion. *Larin I*, 310 P.3d at 993–94; (Doc. 11-1 at 134–35). Finally, Larin was arrested attempting to leave through the backdoor with Alonzo Rada, and he was wearing clothing—including a "sleeve/mask around his neck"—identified by the victims as belonging to one of the intruders. *Larin I*, 310 P.3d at 994; (Doc. 11-1 at 209).

The evidence exculpating Larin is far less persuasive. Rachel's and Amanda's affidavits provide an explanation for Larin's presence in the house. (Doc. 11-1 at 163–64, 166–67.) Alonzo's affidavit and Anthony's trial testimony corroborate Larin's mere-presence defense. (*Id.* at 139, 169–71.)[3] According to this evidence, Rachel drove her

---

[3]     Alonzo invoked his Fifth Amendment rights before Larin's trial and thus did not testify. (Doc. 11-2 at 13.) It was not until after Alonzo completed his sentence that he corroborated Larin's version of the events. Anthony initially testified at trial that Larin did not participate in the home invasion, but he refused to confirm his testimony or answer any more questions. (Doc. 11-1 at 139.) The record shows that Anthony called his mother before Larin's trial and expressed concern about being charged with perjury for lying on Larin's behalf, as "the victims [were not] going to agree" with Anthony's story. (*Id.* at 140; Doc. 11-2 at 121.)

- 7 -

vehicle to pick up Amanda and Larin, and Larin asked Rachel to be dropped off at the victims' house. Alonzo was present and heard Larin's request. After Rachel, Amanda, and Larin left, Alonzo took Amanda's vehicle (the white car), picked up Anthony, and drove to the victims' house. Alonzo and Anthony then forcibly entered at gunpoint, and they observed Larin sitting on the living room couch. Alonzo pointed his gun at Larin and asked for help finding the drugs, but Larin did not recognize him.

This evidence does not establish any prejudice. The evidence presented at trial overwhelmingly showed that Larin was an intruder, not a mere guest. Noticeably absent from Larin's version of the events is an explanation for why the victims did not testify (or inform the police long before trial) that Larin was present before the intrusion and himself a victim, or for why he was caught leaving with one of the other intruders. Furthermore, Larin's evidence is highly suspect: The testimony was given by individuals who had reason to provide false testimony on his behalf (and one was recorded expressing concern about doing so), and the substance of the testimony is questionable at best (e.g., it is doubtful that Larin would not recognize his brother-in-law's voice asking for help).

It is not reasonably probable that a jury would have rejected the testimony of the victims and a disinterested neighbor in favor of the implausible testimony of Larin's family. Therefore, the Arizona Court of Appeals could reasonably conclude that Larin failed to establish prejudice.

### III. All claims fail under de novo review.

Although Larin is not entitled to de novo review, the Court has nevertheless determined that his claims fail under that more favorable standard. To prove ineffective assistance of counsel, Larin must demonstrate both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. To establish deficient performance, Larin must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As stated above, to establish prejudice, Larin "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**Claim (a)**: Larin contends that his counsel was ineffective for failing to interview Rachel and Amanda before trial, because they had information supporting his mere-presence defense. Counsel testified that neither Larin nor his family mentioned that Rachel and Amanda had information that could be helpful to Larin's defense. (Doc. 11-2 at 119.) However, counsel's case file contained a note that included Rachel's phone number and the following remark: "Re: Alibi / Dropping him off @ house. Was gonna p/u later." (*Id.* at 120.) This note supports Larin's assertion that counsel failed to follow up on a material issue. As such, the Court finds that counsel performed deficiently. The effect of this error will be considered together with any other errors that counsel may have made. *See Williams v. Filson*, 908 F.3d 546, 570 (9th Cir. 2018) (recognizing that "the cumulative effect of multiple errors may prejudice a defendant even if no single error in isolation is sufficient to establish prejudice").

**Claim (b)**: Larin contends that his counsel was ineffective for failing to file a pretrial motion to suppress an in-court identification. Before trial, the prosecutor learned that one of the victims might identify Larin in court, but the prosecutor did not disclose that information to Larin's counsel. *Larin I*, 310 P.3d at 997–98. During direct examination, Larin's counsel objected when the victim stated that he could identify one of the intruders. *Id.* at 997. During a bench conference, counsel explained that he received no notice of the testimony, and he moved for a mistrial because there was "no way . . . to unring that bell." *Id.* The trial court denied the motion but sustained the objection, directing the jury to disregard the question and answer. *Id.*

At the conclusion of the victim's testimony, three jurors requested that the victim be asked if he could identify Larin. *Id.* Larin's counsel renewed his motion for a mistrial, arguing that the jury clearly believed that the victim could identify Larin as one of the intruders. *Id.* That motion was also denied. *Id.* On the third day of trial, Larin's counsel filed a written motion, requesting that the trial court either grant a mistrial or strike the victim's testimony. *Id.* That motion was also denied. *Id.* at 998.

Larin fails to demonstrate that his counsel performed deficiently. Despite an

obligation to disclose material information, the prosecutor did not notify Larin's counsel that the victim might make an identification. *Id.* Nevertheless, counsel promptly objected and prevented an identification from being made. In addition, he argued vigorously for a mistrial and renewed his argument when it appeared that the jury could not disregard the testimony. Under the circumstances, this was reasonable performance.

Larin argues that his counsel was deficient for not asking the prosecutor before trial whether the victims could make an identification. However, he provides no reason why counsel should have questioned the completeness of the prosecution's disclosure, or why counsel should have made that inquiry in particular. *See Strickland*, 466 U.S. at 689 (stating that counsel's performance must be assessed without the benefit of hindsight). Furthermore, he does not explain why a motion to suppress would have been successful. Under Arizona law, in-court identifications are generally admissible. *See State v. Goudeau*, 372 P.3d 945, 980–81 (Ariz. 2016). Therefore, Larin has established neither deficient performance nor prejudice. *See Styers v. Schriro*, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008) (per curiam) (stating that "a defendant claiming ineffective assistance of counsel for failure to file a particular motion must . . . demonstrate a likelihood of prevailing on the motion").

**Claim (c)**: Larin contends that his counsel was ineffective for failing to file other pretrial motions. However, he fails to specify what meritorious motions his counsel should have filed. Consequently, he has established neither deficient performance nor prejudice. *See id.*

**Claim (d)**: Larin contends that his counsel was ineffective for failing to request that the jury be instructed on false imprisonment, the lesser-included offense to kidnapping. Under Arizona law, a defendant is guilty of false imprisonment if he "knowingly restrain[s] another person." Ariz. Rev. Stat. § 13-1303(A). A defendant can be guilty of kidnapping if he "knowingly restrain[s] another person with the intent to . . . otherwise aid in the commission of a felony." *Id.* § 13-1304(A)(3). Here, the evidence showed that Larin and his codefendants held the victims at gunpoint (a knowing restraint) so that they could take items from the victims' house (with intent to commit robbery and burglary). As their

conduct clearly exceeded a mere knowing restraint, counsel could have reasonably determined that it would be futile to request a false imprisonment instruction. *See Larin I*, 310 P.3d at 997 (concluding that the evidence did not support giving a false imprisonment instruction). Counsel cannot be found ineffective for failing to raise a meritless argument. *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

**Claim (e)**: Larin contends that his counsel was ineffective for failing to move for a judgment of acquittal on the kidnapping charge. Given the evidence described in this report, however, the jury could reasonably conclude that Larin was guilty of kidnapping. As such, "[a] motion for judgment of acquittal . . . would have been denied, and it was neither unreasonable nor prejudicial for counsel not to make such a fruitless motion." *United States v. Brackenridge*, 590 F.2d 810, 811 (9th Cir. 1979) (per curiam) (citing *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) (en banc)).

**Claim (f)**: Larin contends that his counsel was ineffective for failing to object to certain statements made by the prosecutor. He faults counsel for not objecting when, during opening statement, the prosecutor stated that the jury would hear evidence that Larin, Alonzo, and Anthony were the perpetrators. Larin does not explain why this was objectionable, nor is any ground for objection apparent to the Court. The very purpose of an opening statement "is to state what evidence will be presented," and the prosecutor indeed presented evidence indicating that Larin was guilty. *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).

Larin also faults counsel for not objecting to the prosecutor's leading questions. However, he does not argue that the answers would have been inadmissible if elicited through non-leading questions. Counsel could have reasonably refrained from objecting to such questions to avoid delay. Alternatively, counsel may have wanted to avoid drawing attention to any improper questions and answers. As such, Larin has not overcome the presumption that counsel's failure to object was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Finally, Larin faults counsel for not objecting to statements made by the prosecutor

during closing argument. "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (quoting *Strickland*, 466 U.S. at 689). Larin passingly accuses the prosecutor of misstating a victim's testimony, but he does not argue that the prosecutor's misstatement was so "egregious" that counsel was required to object. He also accuses the prosecutor of erroneously stating that DNA on one of the masks "match[ed]" Larin's DNA, when the testimony was that the DNA could belong to any male in Larin's family. Larin fails to mention, however, that his counsel objected to the prosecutor's statement. (Doc. 11-1 at 212–13.) Furthermore, during closing argument, counsel reminded the jury of Larin's relation to Anthony (they are cousins) and of testimony that 1,100 people in the county might have the same DNA. (*Id.* at 213.) This was not deficient performance.

**Prejudice**: Of the six alleged instances of deficient performance, five are without merit. The effect of counsel's conduct with respect to those instances cannot be considered in the prejudice analysis. *Staten v. Davis*, 962 F.3d 487, 499 (9th Cir. 2020) (stating that courts "cannot consider the cumulative effect of non-errors" (citing *Williams*, 908 F.3d at 570)). This leaves only counsel's failure to interview Rachel and Amanda before trial.

As discussed in the previous section, the evidence of Larin's guilt was overwhelming. Multiple witnesses, including the victims, saw three intruders; Larin was wearing clothing belonging to one of the intruders (including a mask around his neck); Larin was arrested leaving with one of the other intruders; and the car driven by the intruders contained Larin's cellphone. Larin's evidence that he was merely present is not persuasive and does not create a reasonable probability of a more favorable outcome. Larin therefore fails to demonstrate prejudice.

\* \* \*

**IT IS RECOMMENDED** that Petitioner George Benjamin Larin's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) be **denied**.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties shall have fourteen days from the date of service of this recommendation to file specific written objections with the district court. The parties shall have fourteen days to file responses to any objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). No replies may be filed absent prior authorization by the district court. Failure to file timely objections may result in the acceptance of this recommendation by the district court without de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

The Clerk of Court is directed to **terminate** the referral of this matter. Filed objections should bear the following case number: **CV-19-00545-TUC-JCH**.

Dated this 11th day of February, 2022.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge